UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Angela M. Bowen,

    Plaintiff,

    v.                                                  Civil Action No. 2:14-cv-116

Carolyn W. Colvin, Acting Commissioner
of Social Security Administration,

    Defendant.

## OPINION AND ORDER
(Docs. 10, 15)

Plaintiff Angela Bowen brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). Pending before the Court are Bowen's motion to reverse the Commissioner's decision (Doc. 10), and the Commissioner's motion to affirm the same (Doc. 15). For the reasons stated below, Bowen's motion is DENIED, and the Commissioner's motion is GRANTED.

## Background

Bowen was 30 years old when she filed her SSI application in January 2012. (AR 141, 976.) She has a high school education, and worked for brief periods from 1997 through 2000 as a cashier, a stocker, and a child-care worker. (AR 117, 125.) She has four

young children, all of who were living with her on the date of the administrative hearing in April 2013. (AR 976–77.)

Bowen married the father of her children when she was 18 years old. (AR 869.) The couple divorced in 2010 after experiencing stress in the household largely due to Bowen's husband's verbally abusive behavior, their children's medical issues including one having epilepsy and another testing on the autism spectrum, and their house burning down in November 2009. (AR 869–70.) In July 2011, Bowen married her second husband, who is disabled due to a back impairment. (AR 870, 977, 981–82.)

Bowen suffers from migraine headaches, fibromyalgia symptoms, and general recurring pain. (AR 974, 980.) She claims she is unable to work because she is unreliable and cannot make plans due to her pain. (AR 977.) She has tried many different medications, including Imitrex for her headaches, but has found none effective. (AR 980.) She has had numerous emergency room visits, inpatient stays, and rehabilitation sessions at Rutland Regional Medical Center (RRMC) for treatment of her various pain issues, particularly her headaches. (*See, e.g.*, AR 732 (myofascial pain, low back pain, knee pain), 735 (myofascial pain, low back pain, right hand paresthesias), 753 (right flank pain), 756 (migraine, nausea, vomiting, photophobia), 758 (migraine), 761 (chronic back pain), 763 (myofascial pain, low back pain, right hand paresthesias), 907 (severe headache), 912 (headaches), 949 (headache), 955 (headache), 963 (headache).) Bowen testified at the April 2013 administrative hearing that when she gets a severe migraine headache, she is "down and out" for two to three days and "end[s] up in the emergency room with IV medications for eight hours, sometimes longer." (AR 980.)

In a February 2011 Function Report, Bowen stated that, despite her impairments, she was caring for her four children, who ranged in ages between seven and twelve at the time, although "most days are a challenge due to my condition." (AR 134.) In a more recent Function Report, Bowen stated that "[t]here have been plenty of [d]ays when my children[']s step father has had to take them to school and get them ready because I couldn't get out of bed because my body hurt so bad." (AR 153.)

Bowen also suffers from depression and sleeping problems. She testified that she generally sleeps from between 2 and 4 a.m. until about 1 p.m., and then naps in the late afternoon.[1] (AR 983.) In her February 2011 Function Report, Bowen stated that she does not fall asleep until between 3 and 5 a.m. because "my body aches so bad." (AR 133.) She testified that, on days when she is awake for most of the day, she "could very easily just l[ie] down and sleep for seven hours" (AR 983), and that, on a typical day, she does "very little" (AR 979), and is not even able to pick up her children from school (AR 981).

On January 11, 2012, Bowen protectively filed an application for SSI, alleging that she became disabled on January 1, 2008.[2] (AR 48–49, 141–143.) In her application, Bowen

---

[1] Somewhat inconsistently, a report from consulting psychologist Dr. Dean Mooney indicates that Bowen told him she "sleeps during the day from 10:00 a.m. to 1:30 p.m. while her children are at school." (AR 728.)

[2] Although a claimant can collect Disability Insurance Benefits (DIB) under Title II of the Social Security Act for up to 12 months of disability prior to the filing of a DIB application, provided that the claimant had insured DIB status during that period of disability, *see* 20 C.F.R. §§ 404.131, 404.315, a claimant can collect SSI under Title XVI of the Act only as of the date of the SSI application, regardless of how long the claimant may have suffered from the alleged disability, *see* 20 C.F.R. § 416.335. *Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997). Applied here, because Bowen filed an application for SSI and not DIB, the relevant date of onset is January 11, 2012, the date of her SSI application, and not January 1, 2008, the date she alleges her disability began. (AR 48–49, 141–43.) *See* 20 C.F.R. § 416.335 ("When you file an application [for SSI] in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application.").

3

claims that the following conditions limit her ability to work: fibromyalgia, chronic migraine headaches, rheumatoid arthritis, depression, anxiety, chronic urinary tract infections, chronic kidney infections, and asthma.  (AR 145.)  She explains: "There [are] days when I can't get out of bed because the pain is so bad . . . .  I don't ever know if I'll be able to continuously do everyday things due to the chronic pain.  I c[an]'t go for walks or do dishes all the time, I get tired and . . . am in such pain that I need to go to bed."  (AR 152.)  Bowen's application was denied initially and upon reconsideration, and she timely requested an administrative hearing.  The hearing was conducted on April 1, 2013 by Administrative Law Judge (ALJ) Ruth Kleinfeld.  (AR 968–85.)  Bowen appeared and testified, and was represented by an attorney.  On May 22, 2013, the ALJ issued a decision finding that Bowen has not been disabled under the Social Security Act since January 11, 2012, the date her application was filed.  (AR 17–25.)  Thereafter, the Appeals Council denied Bowen's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 7–9.)  Having exhausted her administrative remedies, Bowen filed the Complaint in this action on June 9, 2014.  (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the

third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Kleinfeld first determined that Bowen had not engaged in substantial gainful activity since January 11, 2012, the date she filed her application. (AR 19.) At step two, the ALJ found that Bowen had the severe impairments of chronic pain syndrome (including fibromyalgia and rheumatoid arthritis) and headaches.

(*Id.*)  Conversely, the ALJ found that Bowen's depression and anxiety were non-severe. (AR 19–21.)  At step three, the ALJ found that none of Bowen's impairments, alone or in combination, met or medically equaled a listed impairment.  (AR 21.)  Next, the ALJ determined that Bowen had the RFC to perform the full range of sedentary work, as defined in 20 C.F.R. § 416.967(a), "and she ha[d] the ability to attend to tasks, adjust to changes in the workplace, and interact with others."  (AR 21.)  At step four, the ALJ found that Bowen had no past relevant work.  (AR 24.)  However, the ALJ determined that there were jobs existing in significant numbers in the national economy that Bowen could perform (*id.*), and that a finding of "not disabled" was directed by Medical-Vocational Rule 201.27 (AR 25). The ALJ concluded that Bowen had not been under a disability from January 11, 2012, the date her application was filed, through the date of the decision, May 22, 2013.  (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting

6

the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## **Analysis**

As noted above, at step two of the sequential analysis, the ALJ found that Bowen's headaches were a severe impairment. (AR 19.) The ALJ did not, however, include any specific limitations in her RFC determination which account for these headaches. (AR 21.) Bowen claims this was error. As discussed below, the Court finds otherwise, agreeing with the Commissioner that the ALJ was not required to account for Bowen's headaches in her RFC determination and that the ALJ's RFC determination and credibility assessment are supported by substantial evidence.

The regulations provide that a claimant's RFC is "the most [she] can still do despite [her] limitations," and that the ALJ will assess a claimant's RFC "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a). In assessing Bowen's RFC, the ALJ considered Bowen's headaches and acknowledged that Bowen frequently sought medical care for them, but concluded that they "[did] not occur frequently enough to decrease [work] attendance to an acceptable level." (AR 22.) The ALJ noted that Bowen was admitted to the RRMC in May 2012 after a one-day history of "head fullness, stuffy nose, and shortness of breath," and the treating physician assessed her with "possibly a tension headache" but opined that her headaches "did not seem . . . migraine in nature."[3] (AR 907; *see also* AR 909 (admitted due to "[c]ommunity-acquired pneumonia"), 911 ("admitted here with questionable pneumonia").) The ALJ also noted that, in January 2013, Bowen was admitted to the RRMC for evaluation of a persistent cough accompanied by a headache, and that Bowen was treated with cold medication and Percocet. (AR 958.) The ALJ further noted that, in February 2013, Bowen presented to the RRMC with a headache, after having two teeth extracted earlier that day. (AR 949.) After considering these (and other) medical records, the ALJ reasonably concluded: "Although the medical treatment record confirms [Bowen's] treatment for headaches, often in conjunction with other temporary conditions such as upper respiratory infections or teeth extraction, it does not support [Bowen's] allegations that she would have excessive absences that would preclude work activity." (AR 22.)

---

[3] This May 2012 treatment note indicates that Bowen was admitted "based on 'pneumonia,'" but after testing, no evidence of pneumonia was found. (AR 907.)

8

In addition to the above-described medical records which the ALJ discussed in her decision, Bowen cites a December 2011 medical record in support of her claim that her headaches required frequent hospitalization. (*See* Doc. 10-1 at 5 (citing AR 753).) But that record indicates that Bowen's "chief complaint" was right flank pain radiating to the right abdomen, not headache pain. (AR 753.) Regarding a headache, the record states merely that Bowen "has had development of some mild headache." (AR 754.) The only other medical records cited by Bowen in support of her claim that her headaches occurred more frequently than the ALJ acknowledged are RRMC records showing that Bowen was admitted in September 2011 and December 2012, respectively, for a headache. (*See* Doc. 10-1 at 5) (citing AR 756, 963).) Taken together, the record indicates that Bowen was admitted to the RRMC for treatment of headaches (or, in some cases, for other ailments including pneumonia or teeth extraction) twice in 2011, twice in 2012, and twice in 2013. (AR 754, 756, 906–07, 949, 955–58, 963–65.) This treatment record supports the ALJ's finding that Bowen's migraine headaches did not occur frequently enough to affect her RFC determination.

Also noteworthy, the May 2012 hospital note discussed above and in the ALJ's decision states that Bowen told hospital providers that she generally had a "global" migraine headache no more often than "every 1–3 or 4 months." (AR 912.) Bowen points out, however, that she testified at the administrative hearing that, when she gets a severe migraine headache, she loses her vision, vomits, and is "down and out for . . . anywhere from two to three days," leaving her in the emergency room with IV medications for eight hours or longer. (AR 980.) The ALJ considered this testimony, but found that Bowen's

9

statements regarding the intensity, persistence, and limiting effects of her symptoms "are not entirely credible."[4] (AR 22.) It was proper for the ALJ to determine Bowen's RFC in conjunction with assessing her credibility. *See Poppa v. Astrue*, 569 F.3d 1167, 1170–71 (10th Cir. 2009). The Tenth Circuit explained:

> The regulations require that an ALJ's RFC be based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints. Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.

*Id.* (citations omitted); *see also Sitsler v. Astrue*, 410 F. App'x 112, 120 (10th Cir. 2011) ("A proper determination of the weight to be given claimant's subjective claims of pain and other symptoms underlies a proper finding regarding his RFC.").

Although not asserted in her motion, Bowen argues in her reply that the ALJ's negative assessment of her credibility is not supported by the record. Specifically, Bowen asserts that the medical records provide "overwhelming support" for the credibility of her testimony regarding the severity and duration of her migraine headaches (Doc. 18 at 5), and that ER treatment notes show that Bowen's migraine headaches sometimes lasted for days and other treatment notes indicate that Bowen sometimes had migraine headaches for which she did not seek ER attention (*id.* at 1, 6). Generally, arguments like this which are raised for the first time in a reply brief are deemed waived. *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010). The Court has considered them in this case, however,

---

[4] The ALJ also found that "[Bowen's] subjective complaints and alleged limitations are not persuasive." (AR 24.)

10

and finds that they lack merit, given that substantial evidence supports the ALJ's credibility assessment.

The Second Circuit has long held that it is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted). Thus, if the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Here, as discussed above, the ALJ specifically explained that Bowen's statements regarding the frequency and severity of her headaches lack credibility because they are not supported by the record. (AR 22 (citing AR 908, 949, 958).) The ALJ also noted that a March 2011 Disability Evaluation form indicates that Bowen reported "she is constantly cleaning and picking up her home" and "washes dirty dishes immediately and picks up her children's toys" (AR 20; *see* AR 728)), activities which would be unlikely if Bowen's headaches left her as incapacitated as she claims.

Furthermore, although Bowen claims that her headaches cause vision loss and vomiting (*see* AR 980), the medical records from her headache-related emergency room visits (discussed above) show no loss of vision on examination (*see, e.g.*, AR 753, 758–59, 910–11, 913, 915, 917, 951, 957, 964), and reflect that she denied vomiting prior to

admission to the hospital (*see, e.g.*, AR 753, 758, 915, 949, 955, 963), and did not vomit during these hospital visits (*see* AR 750–60, 906–34, 949–52, 954–65).  Bowen seems to assert that the Court may not consider this evidence because the ALJ did not rely on it in support of her credibility assessment and that the Commissioner improperly engaged in *post hoc* rationalization of the ALJ's decision by "offer[ing] reasoning that the ALJ did not employ."  (Doc. 18 at 5.)  But it is clear from the decision that the ALJ thoroughly considered the medical evidence documenting Bowen's headaches and yet reached a conclusion, supported by substantial evidence as discussed above, with which Bowen disagrees.  Even if the ALJ was not as explicit as possible in her reasoning regarding her assessment of Bowen's credibility, "[a]n ALJ does not have to state on the record every reason justifying a decision."  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).  Nor is an ALJ "required to discuss every piece of evidence submitted," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (internal quotation marks omitted).

      Bowen argues that the ALJ erred in failing to consider "the times that [she] would be absent from work" for reasons other than headaches, including for therapy sessions with Thomas Beauregard, PA, rehabilitation therapy at RRMC, and medical visits with rheumatologist Dr. Douglas Dier.  (Doc. 10-1 at 6–7.)  But the ALJ did consider Bowen's treatment with Beauregard and Dr. Dier.  (AR 19–20, 22–23.)  And the record does not indicate that Bowen would not have been able to work due to these appointments, even when combined with her headache-related treatment.  Moreover, the therapy sessions occurred in 2011, prior to the start of the relevant period, and do not appear to have

continued past that date. (*See* AR 732, 735, 761, 763, 865–68.) Furthermore, many of the therapy notes indicate that Bowen was doing well. For example, a May 2011 treatment note from Beauregard states, with respect to Bowen's depression: "She is doing quite well actually. . . . Overall, she thinks things are quite stable." (AR 868.) Regarding Bowen's treatment with Dr. Dier, the record reveals that Bowen was treated by him twice in 2012 and twice in 2013, and that these were regularly scheduled visits which presumably could have been scheduled around a full-time work schedule. (*See* AR 936–38, 945–47.)

In sum, substantial evidence supports the ALJ's assessment of Bowen's credibility, and thus Bowen's belated credibility argument fails. *See Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) ("We have no reason to second-guess the credibility finding in this case where the ALJ identified specific record-based reasons for his ruling.") (citing SSR 96-7p, 1996 WL 374186, at *4; *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998)).

Finally, Bowen argues that "[t]here was no vocational testimony or other vocational evidence" supporting the ALJ's finding that Bowen's headaches–alone, or in combination with her other impairments–"did not occur frequently enough to decrease [work] attendance to an unacceptable level." (Doc. 10-1 at 7.) Bowen does not explain why vocational testimony was required on this issue, and the Court finds that it was not. The Second Circuit has held that, "[i]f a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). Here, the ALJ found that Bowen had no nonexertional limitations. (AR 24–25.) Bowen does not persuasively dispute that finding,

13

and the Court finds that it is supported by substantial evidence.  Therefore, the ALJ was not required to consult with a vocational expert.  While the Commissioner has the burden to show that a claimant can still perform jobs that exist in the national economy at step five of the sequential analysis, "[i]n the ordinary case[,] the [Commissioner] satisfies [t]his burden by resorting to the applicable medical vocational guidelines (the grids)," *Bapp*, 802 F.2d at 604, which the ALJ did in this case (AR 25).

## Conclusion

For these reasons, the Court DENIES Bowen's motion (Doc. 10), GRANTS the Commissioner's motion (Doc. 15), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 9th day of October, 2015.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge